919 F.Supp. 821 (1996)
Joyce SCHOFIELD, Plaintiff,
v.
TRUSTEES OF the UNIVERSITY OF PENNSYLVANIA, Defendant.
No. 94-CV-5887.
United States District Court, E.D. Pennsylvania.
March 11, 1996.
*822 *823 *824 *825 William H. Ewing, Deborah Weinstein, Connolly, Epstein, Chicco, Foxman, Engelmyer & Ewing, Philadelphia, PA, for Plaintiff.
Neil J. Hamburg, Hamburg & Golden, Philadelphia, PA, for Defendant.

MEMORANDUM AND ORDER
JOYNER, District Judge.

I
This Memorandum and Order resolves the Motion for the Payment of Attorneys' Fees and Expenses filed by the plaintiff in this employment discrimination action. The plaintiff is Joyce Schofield, an African-American woman and a former employee of the defendant, the University of Pennsylvania ("the University"). On September 27, 1994, Ms. Schofield filed a complaint alleging that her supervisor subjected her to racial discrimination and sexual harassment at the workplace. The plaintiff sought relief pursuant to nine claims arising under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; (2) the Civil Rights Act of 1866, 42 U.S.C. § 1981; (3) the Pennsylvanian Human Relations Act, 43 Pa.Cons.Stat. Ann. §§ 951-63; and (4) the tort theories of intentional infliction of emotional distress and negligent retention.
The trial commenced on August 8, 1995, and continued for nine days. At the conclusion of the plaintiff's case-in-chief, we granted the University's motion to dismiss the tort claims. The remaining claims went to the jury, which returned a verdict in Ms. Schofield's favor with respect to her claims that the University permitted a sexually and racially hostile work environment, and in the University's favor as to the claims for quid pro quo harassment and retaliation. The jury awarded Ms. Schofield $40,000 to compensate her for her pain and suffering, but declined to award damages in the form of front and back pay, past and future medical expenses, or punitive damages. Thus, the amount of the jury's award represented approximately 2% of the total damages sought.
Ms. Schofield, through her attorneys, William Ewing and Deborah Weinstein of the Philadelphia law firm of Connolly Epstein Chicco Foxman Engelmyer & Ewing, P.C. (the "Connolly Epstein firm"), now brings the instant motion, and asks this Court to award her over $272,000 in attorneys' fees and expenses. She argues that she is entitled to such an award under both state and federal law, in that she is the prevailing party, the fees were reasonably incurred as a result of this litigation, and the rate charged is the one normally charged by the attorneys who provided the services. For its part, the University argues that an award of fees is not justified in light of the verdict. Alternatively, the University contends that the amount requested is excessive, since both the amount of time expended and the hourly rate claimed are unreasonable.

II
The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, confers upon the court the discretion to award to the prevailing party "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) (1994); see 42 U.S.C. § 2000e-5(k) and 42 Pa.Cons.Stat.Ann. § 962(c)(4)(c.2) (providing for an attorney's fee award under similar circumstances in the employment discrimination context). The extent of the court's discretion in deciding whether to award fees to the prevailing party is narrow, however. Indeed, the Supreme Court has noted that "in absence of special circumstances a district court not merely `may' but must award fees to the prevailing plaintiff." Independent Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 761, 109 S.Ct. 2732, 2736, 105 L.Ed.2d 639 (1989) (citing Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)); see Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (holding that a prevailing plaintiff should recover attorney's fees unless special circumstances would make such an award unjust).
Thus, the party seeking attorney's fees must show that (1) she is a prevailing party; and (2) the fee request is reasonable. In order to be considered a "prevailing party" for § 1988 purposes, one must obtain at *826 least some relief on the merits of the claim, such that the legal relationship between the parties is materially altered in a way that directly benefits the plaintiff. Farrar v. Hobby, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Under this "generous formulation," a plaintiff prevails if she succeeds "`on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.'" Hensley, 461 U.S. at 433, 103 S.Ct. at 1939 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)).
Whether the fee request is reasonable is a far more complex inquiry, which compels the court to examine both the number of hours spent and the hourly rate requested. The party seeking attorney's fees bears the burden of demonstrating that her request is reasonable, and must therefore submit evidence to support its assertions as to the number of hours expended and the rate claimed. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990) (citing Hensley, 461 U.S. at 433, 103 S.Ct. at 1939). The burden then shifts to the opposing party to challenge, with specificity,[1] the reasonableness of the request. Id. While it is not permitted to reduce the requested amount based upon a factor not raised by the opposing party, the court possesses considerable discretion in fixing the fee amount in light of the objections. Bell v. United Princeton Properties, Inc., 884 F.2d 713, 721 (3d Cir. 1989).
With respect to the hours spent, the court should deduct hours from the calculation if they are "excessive, redundant, or otherwise unnecessary." Rode, 892 F.2d at 1183. Thus, the court may deduct hours spent litigating claims on which the party did not succeed, if those claims are factually and legally distinct from the ones on which she prevailed. Moreover, the court should deduct hours that are not sufficiently documented. Id. Finally, the hours spent should be viewed in light of the experience and qualifications of the attorney seeking the award. As our Court of Appeals has remarked, "[a] fee applicant cannot demand a high hourly rate  which is based on his or her experience, reputation, and presumed familiarity with the applicable law  and then run up an inordinate amount of time researching that same law." Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir.1983).
Once a court determines the amount of time reasonably spent, it turns to consider the reasonable hourly rate, which is to be calculated in accordance with the prevailing market rate in the relevant community. Rode, 892 F.2d at 1177 (citing Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). Thus, courts must assess the skill and experience of the prevailing party's attorney, and compare the fee requested with the fees for similar legal services prevailing in the same community for lawyers of like experience, reputation and ability. Student Pub. Interest Research Group v. AT & T Bell Labs., 842 F.2d 1436, 1447 (3d Cir.1988); Jackson v. Philadelphia Housing Auth., 858 F.Supp. 464, 475 (E.D.Pa.1994).
After determining the reasonable hourly rate and time reasonably expended, the court multiplies the two factors to reach the lodestar, which is the presumed reasonable fee. Rode, 892 F.2d at 1183; Rainey v. Philadelphia Housing Auth., 832 F.Supp. 127, 129 (E.D.Pa.1993). This does not end the calculation, however. The district court is further empowered with the discretion to adjust the lodestar if it is not reasonable in light of the results obtained. Rode, 892 F.2d at 1183. In a suit such as this one, therefore, where the plaintiff's claims for relief revolve around a core set of facts and related legal principles, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. This is not to say that the fee award cannot exceed the damages award, or that the court should tailor the fee award so that it is proportional to the damages awarded at trial; *827 instead, the focus is on the nature of the result. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1222 (3d Cir.1995). Thus, where a party achieves an excellent result, that party's attorney will generally be entitled to the lodestar amount. But if the party obtains only a limited or partial success, the lodestar may be excessive, even if the claims raised were interrelated. Id. 461 U.S. at 435-36, 103 S.Ct. at 1940. In sum, the fee awarded must be reasonable in light of the degree of success achieved.

III
Turning now to the fee request at hand, we first note, and the University does not otherwise contend, that Ms. Schofield is a prevailing party. By virtue of the verdict in her favor on her racially and sexually hostile work environment claims, Ms. Schofield has clearly obtained at least some of the relief she sought. Accordingly, she has met the fee statute's threshold requirement and is therefore entitled to an attorney's fee award unless special circumstances make such an award unjust.
The University argues, however, that no award is justified given the relatively small damages award.[2] In support of this assertion, the University relies on Farrar, supra, a case in which the Supreme Court held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Farrar, 506 U.S. at 115, 113 S.Ct. at 575 (internal citation omitted). The University thus contends that since Ms. Schofield prevailed on only two of her nine claims, her victory was so limited that she, like the plaintiff in Farrar, is not entitled to a fee award. Of course, the easy distinction between the instant case and Farrar is that Ms. Schofield was not awarded nominal damages, but instead persuaded the jury that she incurred compensable injuries as a result of the defendant's conduct. Thus, we find that Farrar does not require the result urged by the University.

A. Time Reasonably Spent

Having concluded that Ms. Schofield is entitled to a fee award, we turn now to calculate the lodestar. Our first step is to determine the number of hours reasonably spent by the members of the Connolly Epstein firm in their representation of Ms. Schofield. As we noted above, Ms. Schofield bears the burden of demonstrating that the hours expended are reasonable. To satisfy this burden, she has filed declarations of the attorneys involved and billing sheets detailing the work of Mr. Ewing; Ms. Weinstein; John Mark Myers, an attorney with another law firm who represented Ms. Schofield at a series of depositions; and a number of other lawyers and paraprofessionals. This work, including the services claimed by Mr. Myers, amounts to 1,603.6 hours, and results in a total charge of $247,341. A summary of the hours expended on each of the general areas involved in the litigation follows:

1. Case Assessment and Attempts to Resolve
 Ms. Weinstein ......................... 27.2 hours
 Mr. Ewing ............................. 3.2 hours
 ___________
 Total ................................. 30.4 hours
2. Administrative Agency Proceedings
 Ms. Weinstein ......................... 20.4 hours
 Mr. Ewing ............................. 4.3 hours
 ___________
 Total ................................. 24.7 hours

*828
3. Complaint
 Ms. Weinstein......................... 56.6 hours
 Mr. Ewing ............................ 3.5 hours
 Others ................................ .3 hours
 ____________
 Total.................................. 60.4 hours
4. Discovery
 Ms. Weinstein........................... 452.0 hours
 Mr. Ewing .............................. 77.3 hours
 Mr. Myers ............................. 7.1 hours
 Others ................................ 11.8 hours
 ____________
 Total................................... 548.2 hours
5. Pre-Trial Preparations and Motion Practice
 Ms. Weinstein ......................... 220.4 hours
 Mr. Ewing ............................. 106.3 hours
 Others................................. 226.7 hours
 ____________
 Total.................................. 553.4 hours
6. Trial
 Ms. Weinstein............................ 142.8 hours
 Mr. Ewing .............................. 127.1 hours
 Others.................................. 116.6 hours
 ____________
 Total................................... 386.5 hours

The plaintiff also seeks reimbursement of her costs in the total amount of $25,085.59.
The University contests the amount of time claimed, arguing first that the sixty hours claimed for researching and drafting the complaint are excessive given the background and experience of Ms. Schofield's attorneys. A review of the billing records reveals that Ms. Weinstein expended more than twenty hours researching employer liability for harassment by a supervisor and more than eight hours drafting the complaint. For his part, Mr. Ewing expended 3.5 hours reviewing the product of the research and editing and reviewing the complaint. Upon careful review of the billing records, we conclude that the time claimed for researching the issue of employee liability for purposes of filing the complaint is excessive. The allegations in the complaint presented no novel issues of law. Ms. Weinstein could reasonably have conducted the research needed to draft the complaint in approximately half the time she claims.[3] Accordingly, we will reduce by 11 hours the time expended by Ms. Weinstein under the complaint category.
The University also contends that the time expended during discovery is excessive. Specifically, the University objects to: (1) the 16 hours spent researching and drafting interrogatories; (2) the time spent conducting four depositions of witnesses who did not appear at trial;[4] (3) the *829 17 hours expended by Ms. Schofield defending the University's motion to preclude the plaintiff from contacting its employees ex parte; and (4) the fact that both Mr. Ewing and Ms. Weinstein attended the deposition of the plaintiff. Of these arguments, we find persuasive only the final contention. Mr. Ewing could reasonably have defended his client's deposition on his own. The presence of both attorneys at the deposition was unnecessary and therefore excessive. Thus, we will reduce Ms. Weinstein's time under the discovery category by 6.6 hours.
With respect to the portion of the fee request submitted under the pre-trial category, the University raises two objections. In the first, the University objects to the time the plaintiff's attorneys expended researching and drafting two motions in limine. Further, the University claims that the overall amount of time is excessive in view of the fact that the trial lasted for only two weeks. Upon review of these contentions, we first decline to reduce the claimed time spent as to the motions in limine. A review of the billing records reveals that the time expended included researching and drafting the motions at issue, digesting the responses thereto, and drafting and filing reply memoranda. We find 30 hours per motion to be a reasonable amount of time to accomplish these tasks. Moreover, we find that the University's objection with respect to the overall time spent in the pre-trial category is likewise unavailing. As we noted above, such vague assertions cannot properly be proffered to challenge the propriety of a fee request. Rode, 892 F.2d at 1183. Accordingly, there will be no reduction in the hours claimed under the pre-trial category.
As to the final category, the trial, the University contends that it is unreasonable and excessive for Ms. Schofield to claim fees reflecting the presence of two attorneys and a paralegal at trial. In view of the length of the trial and the number of witnesses who testified, we find that the presence of both Mr. Ewing and Ms. Weinstein was a reasonable step to take in prosecuting this action. It is, however, difficult to justify the need for a paralegal to sit in on the trial. Indeed, in her reply memorandum, Ms. Schofield makes no attempt to explain why the paralegal's presence was necessary. Accordingly, we will reduce the hours expended by the paralegal by 114.1 hours.
Thus, we arrive at the following figures regarding the hours reasonably expended by Ms. Schofield's attorneys in prosecuting this action:

1. Case Assessment and Attempts to Resolve
 Ms. Weinstein......................... 27.2 hours
 Mr. Ewing............................. 3.2 hours
 ____________
 Total ................................ 30.4 hours
2. Administrative Agency Proceedings
 Ms. Weinstein ........................ 20.4 hours
 Mr. Ewing ............................ 4.3 hours
 ____________
 Total ................................ 24.7 hours
3. Complaint
 Ms. Weinstein ........................ 45.6 hours
 Mr. Ewing ............................ 3.5 hours
 Others ............................... .3 hours
 ____________
 Total ................................ 49.4 hours

*830
4. Discovery
 Ms. Weinstein ......................... 438.4 hours
 Mr. Ewing ............................. 73.8 hours
 Mr. Myers ............................. 7.1 hours
 Others................................. 11.8 hours
 ____________
 Total.................................. 531.1 hours
5. Pre-Trial Preparations and Motion Practice
 Ms. Weinstein ......................... 220.4 hours
 Mr. Ewing.............................. 106.3 hours
 Others................................. 226.7 hours
 ____________
 Total.................................. 553.4 hours
6. Trial
 Ms. Weinstein ......................... 142.8 hours
 Mr. Ewing ............................. 127.1 hours
 Others................................. 2.5 hours
 ____________
 Total.................................. 272.4 hours

B. Reasonable Hourly Fee

The University contests the hourly rate Ms. Schofield seeks for Mr. Ewing's services.[5] The only evidence the plaintiff submits regarding the reasonableness of the hourly rate is Mr. Ewing's affidavit, in which he states that he graduated from law school in 1965, served as law clerk to the Honorable Warren E. Burger of the United States Court of Appeals for the District of Columbia Circuit, and was admitted to the Pennsylvania bar in 1970. Further, Mr. Ewing provides evidence of his extensive experience and expertise in civil rights and employment law litigation. Thus, Mr. Ewing asserts that the hourly rate for his services, and the rate at which he seeks to be compensated here, is $285 for work performed in 1993, $295 for work performed in 1994, and $310 for work performed in 1995.
The plaintiff does not provide any evidence suggesting that the rate she seeks for Mr. Ewing's services is commensurate with the market rate in Philadelphia, but instead relies on the recent decision of this Court in Connolly Epstein Chicco Foxman Engelmyer & Ewing v. Fanslow, No. 95-2835, 1995 W.L. 686045 (E.D.Pa. Nov. 15, 1995). In that case, this Court found as fact that "[t]he hourly rates charged by Connolly Epstein were competitive with the rates charged by other law firms in Philadelphia, Pennsylvania." Id. at *2. The plaintiff contends that she need not offer further evidentiary support for her fee request, since the reasonableness of the rates charged by the Connolly Epstein firm has been established.
Upon review of the parties' submissions, we conclude that the plaintiff has failed to meet her burden of demonstrating that the requested rate comports with the market rate. As this Court has previously stated, "[t]he `burden is on the fee applicant to produce satisfactory evidence  in addition to the attorney's own affidavits  that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Rainey, 832 F.Supp. at 129 (quoting Blum, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11). Here, however, the plaintiff has provided nothing but Mr. Ewing's *831 affidavit. She has not offered a factual basis for her claim that the rate Mr. Ewing charges is the market rate, and has not identified other instances in which a civil rights plaintiff's lawyer received an award at an hourly rate of $310.
Her reliance on Fanslow is similarly unavailing. Fanslow was a contract action brought by the Connolly Epstein firm to recover unpaid legal bills. The defendants had retained the Connolly Epstein firm to represent them in connection with two pieces of major litigation the court described as "complicated and protracted and involv[ing] massive numbers of documents." Id. at *2. In ruling in Connolly Epstein's favor, the court concluded generally that the rates charged by Connolly Epstein attorneys, none higher than $295 per hour, were commensurate with the prevailing market rate in Philadelphia. By contrast, the instant action was far less complex, as it involved one plaintiff and a number of related claims arising from a core set of basic facts. Moreover, no dispositive motions were filed; and the case ran its course  from the filing of the complaint until verdict  in less than a year's time. Thus, the Fanslow case does nothing to assist us in determining the market rate for attorneys of Mr. Ewing's experience who represent plaintiffs in civil rights cases.
The University calls our attention to the Third Circuit's recent opinion in Griffiths v. Cigna Corp., 77 F.3d 462 (3d Cir.1996),[6] a case in which the plaintiff sought compensation for the services of Alan B. Epstein, Esquire, a premier plaintiff's employment discrimination lawyer in Philadelphia. In support of his fee application, the plaintiff submitted affidavits of three attorneys in the Philadelphia area who represent plaintiffs in civil rights litigation. These affiants averred that $250 was a reasonable hourly rate, within the range of prevailing rates for top-flight plaintiff's civil rights attorneys in the city. Accordingly, since Ms. Schofield has failed to meet her burden of demonstrating that $310 is the prevailing rate for attorneys of Mr. Ewing's caliber, and since it appears to us that $250 is a reasonable and appropriate hourly rate, Mr. Ewing's time will be reimbursed at a rate of $250 per hour.
We therefore compute the lodestar as follows:

Timekeeper Total Time Value
Ms. Weinstein 894.8 hours $114,965
Mr. Ewing 318.2 hours $ 79,550
Mr. Myers 7.1 hours $ 1,420
Others 241.3 hours $ 18,700.50
 ____________
LODESTAR $214,635.50

C. Lodestar Adjustment

As we noted above, the district court is empowered with the discretion to adjust the lodestar in light of the result obtained. In a case such as this, where the plaintiff's claims were interrelated, the question we must ask to complete our analysis is: "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley, 461 U.S. at 434, 103 S.Ct. at 1940. The clear answer here is no. In the present case, a review of the claims brought, the damages sought, and the verdict rendered reveals that the plaintiff has achieved only a limited success. After a two-week trial, Ms. Schofield was unable to convince the jury that she was entitled to front and back pay damages, to compensatory damages regarding medical expenses, or to punitive damages. The $40,000 in compensation for pain and suffering is therefore a relatively negligible award when viewed in the context of the entire litigation and the quantity of attorney-hours generated as a result of its breadth. Moreover, we note that this was a straightforward case, devoid of legal or factual complexity. *832 The result neither affected public policy issues nor benefitted anyone other than the plaintiff. Under such circumstances, an attorney's fee award greater than five times the size of the verdict is not reasonable; and a substantial downward adjustment is warranted. Rainey, 832 F.Supp. at 131-32. Accordingly, we will reduce the lodestar by two-thirds, yielding a figure of $71,545.16.

D. Costs and Expenses

Finally, the University contests a number of the expenses claimed by the plaintiff. As we noted above, Ms. Schofield submitted a claim for expenses totalling $25,085.59, which includes the expenses incurred by Mr. Myers. The University argues that a number of the expenses are unreasonable, and that the figure claimed by the plaintiff should be reduced by $4,111.50. The plaintiff concedes that the University's objections regarding $788.41 worth of expenses are meritorious, and agrees to reduce her claim by that amount, but argues that the remaining expenditures were reasonable. Upon review of the remaining objections, we conclude that they are without merit. Accordingly, costs will be awarded in the amount of $24,297.18.

IV
For the reasons stated above, we will award Ms. Schofield the total amount of $95,836.34, representing $71,545.16 in attorney's fees and $24,297.18 in costs and expenses.
NOTES
[1] The opposing party is required to "specify with particularity the reasons for its challenge and the category (or categories) of work being challenged," but "need not point to each individual excessive entry." Bell v. United Princeton Properties, Inc., 884 F.2d 713, 721 (3d Cir.1989).
[2] The University also argues that Ms. Schofield's failure to engage in meaningful settlement discussions renders her ineligible for an award. First, we cannot conclude that Ms. Schofield alone prevented settlement in this matter. Indeed, Ms. Schofield was willing to accept the recommendation of Chief Magistrate Judge Powers, who presided over a settlement conference prior to trial, but the University refused the offer. Second, and more importantly, there is simply no support for the notion that a party's refusal to settle disqualifies her from an attorney's fee award. See Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975) ("courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees"). Accordingly, we reject the University's contention.
[3] Our conclusion is based in part on Ms. Weinstein's credentials and qualifications. By the time the lawsuit had been filed, Ms. Weinstein had been practicing employment law at the Connolly Epstein firm for three years. In light of this experience, the time she expended researching a basic issue under Title VII is excessive.
[4] The plaintiff has since agreed to withdraw her request for fees with regard to one of the disputed depositions. Thus, we will reduce Mr. Ewing's time by 3.5 hours and Ms. Weinstein's time by 7 hours. Expenses will also be reduced by $452.00 to account for the transcript costs.
[5] The University concedes that the fee sought for Ms. Weinstein's work is reasonable. Her hourly rate ranges from $110 to $130.
[6] Although this opinion bears the notation "Not for Publication Opinion and has no precedential value," we consider it, in light of the bare record before us, for the narrow purpose of setting the reasonable rate.